**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CIVIL ACTION NO. 3:11-CV-640-S**

DAVID JAMES                                                                                               PLAINTIFF

V.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                            DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**

David James filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied his application for disability insurance and supplemental security income benefits.  Mr. James asserts that the administrative law judge ("ALJ") made several errors in his opinion, but primarily argues that he erred by failing to evaluate whether Mr. James's condition met or equaled Listing 9.08A (diabetes mellitus with neuropathy) and by failing to consider the effect of Mr. James's extreme obesity on his residual functional capacity to perform sedentary work.

After reviewing the parties' fact and law summaries (docket nos. 9 and 10) and the administrative record (docket no. 6), the magistrate judge concludes that the ALJ committed reversible error by deciding without any analysis that none of Mr. James's impairments met or equaled a Listed Impairment.[1]  The magistrate judge further concludes that this was not harmless error, and therefore recommends that the district court remand this matter to the Commissioner for further consideration.

---

[1] If a claimant meets or medically equals a condition included in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1, then the claimant is deemed conclusively disabled and entitled to benefits.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416 .920(a)(4)(iii).

# I. BACKGROUND

## A.  Procedural History

Mr. James filed applications for disability insurance and supplemental security income benefits in July 2009, alleging that on February 28, 2009, he became disabled as a result of his diabetes mellitus, and other conditions related to both his diabetes and his extreme obesity.[2] After Mr. James' applications were denied both initially and on reconsideration, he requested and was granted a hearing before an ALJ.  Following the hearing,[3] the ALJ issued an opinion in which he stated that none of Mr. James's conditions met or equaled a Listed Impairment, and that Mr. James retained the residual functional capacity to perform sedentary work with certain restrictions, so he was therefore not disabled.[4]  Mr. James timely requested review by the Appeals Council, which denied review. He then timely appealed to this court.

## B.  The Five-Step Evaluation Process

In reaching a determination regarding a claimant's disability, an ALJ is required to perform a five-step sequential evaluation process. If the ALJ is able to find that a claimant either is or is not disabled at a particular step, he must not go on to the next step.  The five steps are as follows:[5]

> (1) At the first step, the ALJ consider the claimant's work activity, if any. If the claimant is engaged in substantial gainful activity, he is not disabled.
>
> (2) At the second step, the ALJ consider the medical severity of the claimant's impairments. If there exists no severe medically determinable physical or mental impairment (or combination of impairments) that meets the duration requirement, the claimant is not disabled.
>
> (3) At the third step, the ALJ also considers the medical severity of the claimant's impairments. If the claimant has an impairment that meets or equals one listed in 20

---

[2] Admin. R. at 121-132.
[3] Admin. R. at 34-62.
[4] *See generally* Admin. R. at 13-33.
[5] 20 C.F.R. § 404.1520(a)(4).

>C.F.R. Pt. 404, Subpt. P, App 1, and meets the duration requirement, the ALJ must find that the claimant is disabled.

Before the ALJ goes from step three to step four, he must assess the claimant's residual functional capacity, which the ALJ then must use at both step four and step five when evaluating the claimant's alleged disability.

>(4) At the fourth step, the ALJ must consider his assessment of the claimant's residual functional capacity and his past relevant work. If the claimant can still do his past relevant work, the ALJ must find that he is not disabled.

>(5) At the fifth and last step, the ALJ must consider his assessment of the claimant's residual functional capacity and his age, education, and work experience to see if the claimant can make an adjustment to other work. A claimant who can make an adjustment to other work is not disabled, but one who cannot is disabled.

Mr. James asserts that the ALJ erred at step three, because he failed to determine that Mr. James's diabetes mellitus with neuropathy met or equaled Listing 9.08A, and further erred when assessing Mr. James's residual functional capacity, because he failed to consider the effect of Mr. James's extreme obesity.[6]

## II. FINDINGS OF FACT

In his opinion, the ALJ found that Mr. James suffers from the severe impairments of "obesity and diabetes with neuropathy and edema."[7] Mr. James does not dispute this Finding (Number 3), but asserts that the ALJ's next finding regarding whether any of his impairments met or equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, was erroneous as a matter of law and unsupported by the evidence in the record.

In Finding Number 4, the ALJ wrote only two paragraphs. In the first paragraph he stated (in its entirety):

---

[6] Mr. James also asserts that the ALJ erred when he determined that Mr. James had a GED and was not disabled. Because Mr. James provided conflicting testimony regarding his educational status, *see* Admin. R. at 41, 148, 179, and 370, and because the disability determination is integrally linked to the evaluation of the two principal errors asserted by Mr. James, the magistrate judge did not consider either of these comparatively minor allegations of error.

[7] Admin. R. at 25 (Finding No. 3).

3

> None of the professional medical opinions of record indicate that the claimant's impairments meet or equal the criteria of a listed impairment, nor does the objective medical evidence of record indicate as much.[8]

The ALJ did not identify which of the listed impairments he considered, set forth their specific criteria, or discuss in any way which specific evidence in the record supported his determination.

In his second paragraph of Finding Number 4, the ALJ stated:

> There are no listing criteria in Appendix 1 specific to the evaluation of obesity impairments. However, SSR 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. … These considerations have been taken into account in reaching the conclusions herein at the 2nd through 5th steps of the sequential disability evaluation process, even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity.[9]

In the assessment of Mr. James's residual functional capacity (Finding Number 5), the only mentions of Mr. James's obesity were the following statements. The first was at the end of a discussion regarding Mr. James's complaints of right leg pain and stated: "The claimant is admittedly overweight, and has spoken with his doctor about undergoing gastric bypass surgery, but that has not occurred."[10] The second was a stand-alone paragraph, in which the ALJ noted: "The claimant stated during the hearing that he is 5'9" tall and weighs 415 pounds. This would give the claimant a body mass index of 61.3. The claimant's treating physician, Dr. Sasser, noted the claimant to be morbidly obese on September 3, 2008."[11] There is no mention of any

---

[8] Admin R. at 26.
[9] Admin R. at 26.
[10] Admin. R. at 27.
[11] Admin. R. at 27 (internal citations omitted).

4

treatment records discussing or noting Mr. James's obesity,[12] or of either functional capacity assessment prepared by Dr. Sasser.[13]

Accordingly, Mr. James asserts that although the ALJ correctly noted that Social Security Ruling 02-1p applies to any determination of Mr. James's disability, he nevertheless failed to apply that ruling in the subsequent analysis and determination of Mr. James's residual functional capacity.[14]

### III.  STANDARDS OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo,* nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Comm'r of Soc. Sec.,* 279 F.3d 348, 353 (6th Cir.2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health and Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

### IV. CONCLUSIONS OF LAW

**A.  The ALJ's Analysis of Whether Mr. James's Impairments Met or Medically Equaled any of the Listed Impairments**

The magistrate judge concludes that the ALJ committed an error of law when he failed to provide any analysis or discussion, or even to identify which listings he considered (much less their criteria), in reaching his conclusion that Mr. James did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. In this instance, that failure was not harmless error, and remand is required.

---

[12] *See*, *e.g.,* Admin. R. at 190-91.
[13] Admin. R. at 343-345, 663-665 (assessments submitted to private insurance carrier).
[14] *See* Admin. R. at 26-28.

As noted above, if a claimant meets or equals one of the Listed Impairments, then the claimant is deemed conclusively disabled and the analysis stops at step three. In this matter, the ALJ concluded at step two that Mr. James's diabetes mellitus with neuropathy and edema was a severe impairment,[15] as was his obesity, but at the third step of his evaluation, he simply stated:

> None of the professional medical opinions of record indicate that the claimant's impairments meet or equal the criteria of a listed impairment, nor does the objective medical evidence of record indicate as much.

The ALJ not only failed to identify the listed impairment for which Mr. James might have, but did not qualify (Listing 9.08A-Diabetes Mellitus with Neuropathy), but also failed to provide any analysis or citation to the record in support of his determination that Mr. James's impairments did not meet or medically equal any Listed Impairment, much less Listing 9.08A.

The governing statute is clear that any decision involving "a determination of disability and which is in whole or in part unfavorable ... shall contain a statement of the case, in understandable language, *setting forth a discussion of the evidence*, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1)(emphasis added). Without this level of specific and detailed analysis and explanation, there can be no effective and meaningful judicial review.

Although the Sixth Circuit has not provided any published authority on whether it is reversible error for an ALJ to fail to identify which Listed Impairments he considered, or to fail to identify which evidence in the record supports his conclusions, the Sixth Circuit has provided unpublished authority through *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165, *2 (6th Cir. 2011), that constitutes persuasive authority on his topic. *Reynolds* states:

> [A]n ALJ must include a discussion of findings and conclusions, and the reasons or basis therefor, on all the material issues of fact,

---

[15] Admin. R. at 25.

> law, or discretion presented on the record. The reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial review.

*Reynolds*, 2011 WL 1228165 at *2 (unpublished decision) (internal citations and quotations omitted). Several sister courts in the Eastern District of Kentucky have recognized and followed that reasoning when determining that a cursory conclusion at step three of the ALJ's analysis will not suffice. *See, e.g., Whitaker v. Comm'r of Soc. Sec.,* 2011 WL 3847502, * 3 (E.D. Ky. 2011)(Hood, J.) *Morgan v. Astrue,* No. 10–207, 2011 WL 2292305, *4 (E.D. Ky. 2011)(Forester, J.)(unpublished decisions). In addition, several federal circuit courts have reached conclusions similar to *Reynolds* in published decisions. *Audler v. Comm'r of Soc. Sec.,* 501 F.3d 446 (5th Cir.2007); *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 120 (3rd Cir.2000); *Clifton v. Comm'r Soc. Sec.*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Cook v. Comm'r Soc. Sec.,* 783 F.2d 1168, 1172–73 (4th Cir. 1986); *Brown v. Comm'r Soc. Sec.,* 794 F.2d 703, 708 (D.C. Cir. 1986).

Following this line of persuasive authority, the ALJ should have identified which particular Listed Impairments were considered and compared the actual available medical evidence with the requirements for those impairments before stating his conclusion. Where, as here, an ALJ offers nothing to support his conclusions at step three, a reviewing court cannot tell whether the ALJ's decision is based on substantial evidence. The reviewing court is thereby deprived of any opportunity to provide meaningful judicial review. The ALJ's analysis at step three was therefore inadequate and erroneous as a matter of law.

Errors, however, are sometimes harmless, but the magistrate judge concludes this one was not. Listing 9.08A (diabetes mellitus), in pertinent part, requires the following: "Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and

7

station (see 11.00C)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 9.08A (2011[16]). Listing 11.00C states: "The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00C (2011).

There exists sufficient evidence in the record about which reasonable minds could differ regarding whether Mr. James's condition met or equaled the criteria for Listing 9.08A. Following testing at Baptist East, Mr. James was diagnosed with peripheral neuropathy.[17] Although the diagnosis was of mild neuropathy, there are also treatment notes indicating Mr. James had begun to suffer from weakness in his legs, which had caused him to fall more than once.[18] Although there are notes from his physical therapist regarding his range of motion and his activities of daily living which indicate that he perhaps might not satisfy the assessment criteria in Listing 11.00C,[19] there are also many treatment notes regarding the effects that leg pain and swelling affected his ability to walk about.[20] There are also two functional capacity assessments prepared by Mr. James's treating physician that the ALJ did not mention, much less discuss, or explain his reasons for rejecting them.[21] Because he failed to explain which Listing Impairment he considered, evidence he relied upon and which he rejected, the ALJ's error was not harmless.

---

[16] The current regulations differ slightly from those in effect at the time the ALJ made his determination.
[17] Admin. R. at 269-273.
[18] Admin. R. at 222, 238, 356.
[19] *See, e.g.,* Admin. R. at 287, 289, 292.
[20] Admin. R. at 304.
[21] Admin. R. at 343-345, 363-365.

### B. Whether the ALJ Erred by Failing to Consider the Effect of Mr. James's Obesity on his Residual Functional Capacity

Because the this matter must be reversed and remanded at step three of the required analysis, the court need not address Mr. James's additional argument regarding whether the ALJ properly considered the effect of Mr. James's extreme obesity when assessing his residual functional capacity. The magistrate judge will, however, observe that the ALJ's discussion of what, if any, effect Mr. James's extreme obesity had on his residual functional capacity was also cursory. He merely stated Mr. James's height, weight, and body mass index, noted that his treating physician deemed him obese, and remarked that he was recommended for gastric bypass surgery, but had not as yet had the surgery performed. The ALJ did not explain whether, and if so to what extent, Mr. James's obesity and any related complications affected the analysis of his residual functional capacity. Accordingly, the court has no meaningful way to evaluate the sufficiency of his determination or whether he did, in fact, comply with Social Security Ruling 02-1p.

## V. RECOMMENDATIONS

Where, as here, an ALJ did not comply with the applicable law, the appropriate remedy is reversal and a remand pursuant to sentence four of 42 U.S.C. § 405(g). The magistrate judge recommends that the district court remand this matter to the Commissioner of Social Security for an appropriate discussion of the evidence and an explanation of the reasoning supporting any determination that the Mr. James's severe impairments do not meet or medically equal a Listed Impairment.

**DATE:**

cc: counsel of record

## **NOTICE**

    Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived. 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).